# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SANTOS MAXIMINO GARCIA,

     Plaintiff,

     v.

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS

     Defendant.

Civil Action No.  16-cv-94 (JDB)

## MEMORANDUM OPINION

Plaintiff Santos Maximino Garcia, proceeding <u>pro se</u>, brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant, the Executive Office for United States Attorneys ("EOUSA"), Compl. [ECF No. 1] at 1.  Plaintiff seeks "disclosure of all information germane to prosecution witness Noe Cruz," a cooperating witness who testified for the government in Garcia's federal criminal trial. <u>Id.</u>  Asserting that it has satisfied its disclosure obligations under FOIA, EOUSA moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> Def.'s Mot. for Summ. J. [ECF No. 18] at 1.  The Court advised plaintiff of the need to respond to EOUSA's motion and granted him an extension to file a response.  <u>See</u> Oct. 11, 2017 Order [ECF No. 19].  Plaintiff, however, has failed to respond, and his time to do so expired over four months ago.

The Court finds that EOUSA's search for the requested documents was adequate, and that the agencies sufficiently justified withholding responsive documents under the relevant statutory exemptions.  Hence, for the reasons explained below, the Court will grant EOUSA's motion for summary judgment.

## BACKGROUND

On November 16, 2014, plaintiff submitted a request to EOUSA for the release of documents pursuant to FOIA. <u>See</u> Compl. Ex. A. In his request, plaintiff sought the disclosure of "all information germane to prosecution witness Noe Cruz" relating to plaintiff's criminal case, <u>United States v. Garcia</u>, No. 05-0393 (D. Md. judgment issued May 13, 2009). <u>Id.</u> He claimed that the prosecution "never attempted to ascertain the scope of [Cruz's] criminal history" and was "deliberately ignorant" as to Cruz's rape charge, for which he was indicted in 2013, five years after plaintiff's trial. Compl. at 5.

On January 5, 2015, EOUSA notified plaintiff that his request was received. Compl. Ex. B. EOUSA's response informed plaintiff that records pertaining to a third party generally cannot be released absent (1) "express authorization and consent of the third party," (2) "proof that the subject of the request is deceased," or (3) "a clear demonstration that the public interest in disclosure outweighs the third party's personal privacy interest and that significant public benefit would result from the disclosure of the requested records." <u>Id.</u> Since plaintiff did not provide a release, death certificate, or public justification for release, EOUSA explained that the release of records concerning Noe Cruz would result in an unwarranted invasion of personal privacy. <u>Id.</u>

On January 14, 2015, plaintiff appealed EOUSA's decision to the Office of Information Policy ("OIP"). Compl. Ex. C. He claimed that all documentation involving Cruz should be disclosed, citing the D.C. District Court's decision in <u>Marino v. Drug Enforcement Administration</u>, 15 F. Supp. 3d 141 (D.D.C. 2014). <u>Id.</u> OIP informed plaintiff on February 10, 2015 that his appeal had been received a week earlier. Compl. Ex. D. On June 30, 2015, OIP notified plaintiff that it had "affirm[ed], on partly modified grounds, EOUSA's action on [plaintiff's] request." Compl. Ex. E. OIP explained that, because any non-public records responsive to plaintiff's request would

be categorically exempt from disclosure, EOUSA properly asserted FOIA Exemption 7(C) and was not required to conduct a search for the requested records.  Id.

Blocked from receiving his requested information, plaintiff filed a complaint in this Court on January 15, 2016, seeking the disputed materials.  See Compl.  EOUSA filed a motion to dismiss on the same grounds provided in OIP's denial of plaintiff's FOIA request.  See Mot. to Dismiss [ECF No. 3] at 1.  The Court denied the government's motion, stating that "EOUSA's Exemption 7(C) claims are best considered as to specific documents, rather than in the abstract."  See June 21, 2016 Order [ECF No. 7] at 2.  EOUSA then forwarded plaintiff's request to EOUSA's FOIA contact for the United States Attorney's Office for the District of Maryland ("USAO-MD") and asked it to search for any records related to plaintiff's prosecution.  See Def.'s Mot. for Summ. J. at 4.  All systems within the USAO-MD likely to contain records responsive to plaintiff's request were searched, and EOUSA claims that "[t]here are no other records systems or locations within EOUSA in which other files pertaining to Garcia were maintained."  Id.

In the course of processing plaintiff's request, EOUSA determined that certain records originated from other agencies and, accordingly, referred those records to the Department of Justice's Criminal Division ("DOJ"), the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"), and DOJ's Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  Each agency prepared a declaration and a Vaughn index addressing all documents withheld pursuant to an applicable FOIA exemption, in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).  See Decl. of David Luczynski ("Luczynski Decl.") and Luczynski Decl. Ex. H ("EOUSA Vaughn Index") [ECF No. 18-2]; Decl. of John E. Cunningham III ("Cunningham Decl.") and DOJ Vaughn Index [ECF No. 18-3]; Decl. of Matthew Riley ("Riley

Decl.") and Riley Decl. Ex. 1 ("ICE Vaughn Index") [ECF No. 18-4]; Decl. of Stephanie M. Boucher ("Boucher Decl.") and Boucher Decl. Ex. E ("ATF Vaughn Index") [ECF No. 18-5].

EOUSA moved for summary judgment on July 7, 2017, claiming it had fulfilled its obligations under FOIA. See Def.'s Mot. for Summ. J. at 1. A schedule issued by the Court required plaintiff to file a response to defendant's motion and any cross-motion for summary judgment by September 8, 2017. See June 6, 2017 Order [ECF No. 17]. On October 11, 2017, after no such response was filed, the Court advised plaintiff of the consequences of failing to respond to a dispositive motion under Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988), and ordered him to file any response to EOUSA's motion for summary judgment by November 10, 2017, see Oct. 11, 2017 Order. Plaintiff has still filed no response; therefore, pursuant to the October 11, 2017 Order and the D.C. Circuit's decision in Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507–08 (D.C. Cir. 2016), the Court may accept as undisputed defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and may decide the motion without the benefit of any opposition brief from plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" which it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); see Celotex, 477 U.S. at 323.

"FOIA cases typically and appropriately are decided on motions for summary judgment." Georgacarakos v. FBI, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). FOIA is a means for citizens to "know "what their Government is up to.""" Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171 (2004) (citation omitted). Accordingly, FOIA requires federal agencies to release their records to the public upon request, unless the requested information falls within one of nine statutory exemptions to disclosure. See 5 U.S.C. § 552(a)(3)(A), (b).

District courts review de novo an agency's decision to withhold requested documents under a statutory exemption, and the agency withholding responsive documents bears the burden of proving the applicability of claimed exemptions. Am. Civil Liberties Union (ACLU) v. U.S. Dep't of Defense, 628 F.3d 612, 619 (D.C. Cir. 2011). An agency is entitled to summary judgment "if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" ACLU, 628 F.3d at 619 (citation omitted).

Even if the nonmoving party fails to respond to the motion for summary judgment, "a motion for summary judgment cannot be 'conceded' for want of opposition." Winston & Strawn, 843 F.3d at 505. The burden is always on the movant to demonstrate why summary judgement is warranted, and "[t]he nonmoving party's failure to oppose summary judgment does not shift that

burden." Id. (quoting Grimes v. District of Columbia, 794 F.3d 83, 97 (D.C. Cir. 2015)).  Pursuant

to Federal Rule of Civil Procedure 56(e)(1), the district court can "give a party who has failed to

address a summary judgment movant's assertions of fact 'an opportunity to properly support or

address' the fact."  Grimes, 794 F.3d at 92 (quoting Fed. R. Civ. P. 56(e)(1)).  However, if the

nonmovant fails to respond to a movant's factual submission and then fails to take advantage of

the opportunity to rectify that failure, the district court may consider the facts undisputed for

purposes of the motion.  Winston & Strawn, 843 F.3d at 507; see Grimes, 794 F.3d at 94.

## ANALYSIS

## I.     EOUSA's Search for Requested Documents was Adequate Under FOIA

An agency only fulfills its FOIA obligations if it can demonstrate beyond a material doubt

that its search was "reasonably calculated to uncover all relevant documents."  Weisberg v. U.S.

Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  To prevail in a FOIA action, the agency

must show that it has made "a good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  Oglesby v.

U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  "The question is not whether there

might exist any other documents possibly responsive to the request, but rather whether the search

for those documents was adequate."  Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C.

Cir. 1994) (citation omitted).  Adequacy is judged by a standard of reasonableness.  Weisberg v.

U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agencies are not required to

search every record system; rather, a search may be reasonable if it includes all systems "that are

likely to turn up the information requested."  Ryan v. FBI, 174 F. Supp. 3d 486, 491 (D.D.C. 2016)

(quoting Oglesby, 920 F.2d at 68).

The agency may meet its burden and show that the search was adequate by submitting reasonably "detailed and non-conclusory" affidavits or declarations that are submitted in good faith, SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and an index of the information withheld, Vaughn, 484 F.2d at 827–28. For an affidavit to be "reasonably detailed," it must "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68. Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized" are insufficient to support summary judgment. Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980).

EOUSA submitted a declaration from David Luczynski, an EOUSA Attorney Advisor, in order to meet its burden with respect to the adequacy of its search. See Luczynski Decl. ¶ 1. Luczynski's declaration states that EOUSA evaluated plaintiff's FOIA request and, because each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office, it forwarded the request to EOUSA's FOIA contact for the USAO-MD. Id. ¶ 10. The FOIA contact conducted a systematic search for records using the search term "Santos Maximino-Garcia"[1] and the case number to determine the location of all files relating to plaintiff. Id. The FOIA contact used the "LIONS" system, the computer system used by United States Attorney's Offices "to track cases and to retrieve files pertaining to cases and investigations." Id. With this

---

[1] Plaintiff's last name does not appear to include a hyphen in any of the other documents filed in this case, which theoretically could suggest that the search terms were inadequate. But see Judicial Watch v. U.S. Dep't of State, Civ. Action No. 12-893 (JDB), 2017 WL 3913212, at *11 (D.D.C. Sept. 6, 2017) (rejecting argument that a search was inadequate because the State Department used variants of Anwar Aulaqi's last name rather than his full name). However, plaintiff does not allege that the search terms were inadequate, and it appears that EOUSA found plaintiff's criminal case files without difficulty.

system, "the user can access databases which can be used to retrieve information based on a defendant's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number for any court cases." Id. According to Luczynski, "[a]ll documents responsive to plaintiff's FOIA request would have been located in the United States Attorney's office for the District of Maryland" and "[t]here are no other records systems or locations within EOUSA in which other files pertaining to plaintiff were maintained." Id.

Luczynski's affidavit provides sufficient information for EOUSA's search process to be challenged: it indicates who conducted the search, specifies the search terms used, and describes the type of search conducted. See Weisberg, 627 F.2d at 371; Oglesby, 920 F.2d at 68. The information in the affidavit indicates that EOUSA took a sensible and systematic approach to plaintiff's FOIA request. Plaintiff has not alleged that any of the information EOUSA provided was inaccurate, or that its process was inadequate. Accordingly, because EOUSA ensured that all systems "likely to contain records responsive to plaintiff's request were searched," Luczynski Decl. ¶ 11, and submitted a reasonably detailed declaration describing the search, the search was adequate.

## II.  THE RESPONSIVE DOCUMENTS WERE PROPERLY WITHHELD PURSUANT TO FOIA'S STATUTORY EXEMPTIONS.

After the search is deemed adequate, the agency must show that withheld materials fall within a FOIA statutory exemption. Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 253 (D.D.C. 2005). Here, each agency submitted a declaration and Vaughn index addressing all responsive documents withheld pursuant to a FOIA exemption. See Luczynski Decl. ¶¶ 13–29 and EOUSA Vaughn Index; Cunningham Decl. ¶¶ 10–25 and DOJ Vaughn Index; Boucher Decl. ¶¶ 16–37 and ATF Vaughn Index; Riley Decl. ¶¶ 25–37 and ICE Vaughn Index.

Between them, the agencies invoked seven different FOIA exemptions that they claimed apply to all or some of the responsive documents. The Court will address each in turn.

## A. FOIA Exemption 6

EOUSA, DOJ, ICE, and ATF withheld records pursuant to FOIA Exemption 6, which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether Exemption 6 applies, a court must first determine whether the responsive records are personnel, medical, or similar files. See Multi Ag Media LLC v. U.S. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008). If so, the court must then decide whether the disclosure of the third-party information "would constitute a clearly unwarranted invasion of personal privacy." Id. This requires the court "to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." Id.

"Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599 (1982). Accordingly, Exemption 6 is designed to cover "detailed Government records on an individual which can be identified as applying to that individual." Id. at 602. Courts have applied this exemption broadly, holding specifically that Exemption 6 covers "such items as a person's name, address, place of birth, employment history, and telephone number." Judicial Watch, Inc. v. U.S. Dep't of the Navy, 25 F. Supp. 3d 131, 141 (D.D.C. 2014).

EOUSA, DOJ, ICE, and ATF each invoked Exemption 6 for all records "pertaining to third party individuals to protect their personal privacy interests." Luczynski Decl. ¶ 20. EOUSA's Vaughn Index lists, for example, a document withheld under Exemption 6 because it contains

names and identifying information of victims and suspects.  See, e.g., EOUSA Vaughn Index, Doc. 3; see also DOJ Vaughn Index, Doc. 1 (redacting the names and identifying information of lower-level government employees and other third parties who provided information to the Department of Justice during the course of criminal investigations and prosecutions); ICE Vaughn Index, Doc. 2 (withholding documents that contain the first and last names, addresses, phone numbers, and fax numbers of special agents); ATF Vaughn Index, Doc. 1 (withholding, among other things, the names and identifying information of ATF Special Agents, RAGE Task Force Officers, Local Law Enforcement Officers and USAO personnel, suspects in the investigation, and confidential informants).  Given the broad application of Exemption 6, this information falls within Exemption 6's "personnel file" category.

The Court must therefore balance the privacy interests and public interest at stake.  "The balancing analysis for FOIA Exemption 6 requires that we first determine whether disclosure of the files 'would compromise a substantial, as opposed to de minimis, privacy interest,' because '[i]f no significant interest is implicated . . . FOIA demands disclosure.'"  Multi Ag Media LLC, 515 F.3d at 1229 (quoting Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989)).  A "substantial privacy interest exists in avoiding embarrassment, retaliation, or harassment and intense scrutiny by the media that would likely follow disclosure."  Judicial Watch, Inc. v. U.S. Dep't of State, 875 F. Supp. 2d 37, 46 (D.D.C. 2012); see also Horner, 879 F.2d at 875 ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant[.]").  Then the Court must "address the question whether the public interest in disclosure outweighs the individual privacy concerns."  Multi Ag Media LLC, 515 F.3d at 1230.  The basic purpose of FOIA is for citizens to be informed about what their government is up to.  Id. at 1231.  Accordingly, information that "sheds light on an agency's performance of its

statutory duties" is in the public interest.  U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989).

Here, each agency reasonably determined that the privacy interests at stake were substantial.  The agencies withheld records or portions of records because the names and identifying information of third-party individuals permeated those documents, and disclosure could be expected to cause "harassment, embarrassment and/or unsolicited publicity which would clearly constitute an unwarranted invasion of their personal privacy."  Cunningham Decl. ¶ 16; see Luczynski Decl. ¶ 19; Riley Decl. ¶ 29; Boucher Decl. ¶ 22.  This claim is especially significant in light of plaintiff's involvement in a RICO investigation by the ATF Regional Area Gang Enforcement (RAGE) Unit Task Force, which was established to address the violent crimes carried out by the MS-13 street gang.  See Boucher Decl. ¶ 11; see also id. ¶ 23 ("ATF determined that the disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third parties' privacy, because being associated with ATF's criminal investigation into Plaintiff's unlawful actions carries a stigmatizing and negative connotation.").  The agencies noted that the documents withheld included a wide range of identifying personal information, and they raised legitimate concerns about retaliatory actions that could be taken against the law enforcement agents and cooperating witnesses whose information the agencies wish to shield under Exemption 6—particularly given the violent tendencies of the MS-13 gang— and about maintaining the confidentiality of witnesses who cooperated with the promise that their identities would remain private.  See id. ¶¶ 23–25; Cunningham Decl. ¶¶ 16, 18; Luczynski Decl. ¶ 18; Riley Decl. ¶¶ 28–31.  All of these considerations weigh strongly against disclosure.  See U.S. Dep't of State v. Ray, 502 U.S. 164, 175 (1991).

These individual privacy interests are not outweighed by any public interest in disclosure. Any such interest must be rooted in "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" <u>U.S. Dep't of Air Force v. Rose</u>, 425 U.S. 352, 372 (1976). The agencies assert that there is little public interest in the disclosure of personal information about third parties involved in ATF's investigation. <u>See</u> Riley Decl. ¶ 36 ("The disclosure of this [personal identifying information] serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibility."); <u>see also</u> Cunningham Decl. ¶ 18 ("[T]he Criminal Division balanced the significant personal privacy interests of a third-party confidential source in not having their name and identifying information disclosed against the negligible public interest in the disclosure of their identity."). The Court agrees. While information regarding the RAGE Unit Task Force might shed light on ATF's operations against a prominent gang, the documents withheld under Exemption 6 contain a wide range of confidential information about individuals involved with the Task Force's investigations. "[R]arely does a public interest outweigh an individual's privacy interest when law enforcement information pertaining to an individual is sought," <u>Martin v. Dep't of Justice</u>, 488 F.3d 446, 457 (D.C. Cir. 2007), and this is not one of those rare instances.

In sum, because the disclosure of the third-party identifying information would "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and disclosure of the information would serve little public benefit, the agencies' reliance on Exemption 6 in withholding responsive documents was appropriate.

### B. **FOIA Exemption (7)(C)**

EOUSA, DOJ, ICE, and ATF each withheld records pursuant to FOIA Exemption 7(C). This provision exempts from disclosure "records or information compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Where disclosure of information compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy," id., "such information can be withheld if the privacy interests outweigh the public interest in disclosure." King v. U.S. Dep't of Justice, 245 F. Supp. 3d 153, 161 (D.D.C. 2017).

"[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." Martin, 488 F.3d at 457. This Court has held that, under Exemption 7(C), the disclosure of names and other identifying information of third parties that could lead to the individuals becoming "targets of harassment and humiliation" is a "'legitimate interest' weighing against disclosure." King, 245 F. Supp. 3d at 161 (quoting Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980)); see also SafeCard Servs., Inc., 926 F.2d at 1205 ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.").

Once the government has shown that the privacy concerns addressed by Exemption 7(C) are present, the burden shifts to the requester to demonstrate that the "public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." Favish, 541 U.S. at 172. The D.C. Circuit has categorically held that, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Servs., Inc., 926 F.2d at 1206.

Here, EOUSA, DOJ, ICE, and ATF withheld law enforcement records under Exemption 7(C).  <u>See</u> Luczynski Decl. ¶ 21 and EOUSA Vaughn Index; Cunningham Decl. ¶¶ 15–16 and DOJ Vaughn Index; Boucher Decl. ¶ 18 and ATF Vaughn Index; Riley Decl. ¶ 26 and ICE Vaughn Index.  The privacy interests relating to these law enforcement records claimed by each agency outweigh the public interest in disclosure.  As described above in connection with Exemption 6, the agencies each assert a strong privacy interest against disclosure: the release of documents compiled for law enforcement purposes could subject individuals to "harassment, harm, or exposure to unwanted and/or derogatory publicity and interferences."  Luczynski Decl. ¶ 22.

The public interest in favor of disclosure, meanwhile, is slight.  In his complaint, plaintiff asserts that the prosecution was "deliberately ignorant" of Cruz's criminal history during his tenure as a cooperating witness, because it "fail[ed] to discover that its principal witness had committed a rape and perjured himself during Plaintiff's 2008 trial to the extent that his testimony purposely omitted this offense from any discussion as to his criminal history."  Compl. at 5–6.  Plaintiff therefore claims, citing <u>Marino v. Drug Enforcement Administration</u>, 15 F. Supp. 3d 141, that this purported "government impropriety" creates a significant public interest in the release of information about Cruz, Compl. at 7.  This claim is unpersuasive.  In <u>Marino</u>, the court held that "Marino has presented evidence indicating that the Government 'might' have been negligent in failing to know that its key witness was lying to the jury and seriously understating his involvement in the [drug ring] conspiracy."  15 F. Supp. 3d at 154; <u>see also</u> <u>id.</u> at 154–55 (citing reasons why the government should have been aware that the primary witness's role in the drug organization was more extensive than he represented, and holding that the government acted either negligently in failing to cross-check his story against the government's broader investigation of the drug organization or improperly by presenting his testimony despite knowing it was false).

Here, by contrast, plaintiff offers no evidence as to why the prosecution should have been aware of Cruz's 2003 rape. See Compl. at 5. Plaintiff's argument is particularly unconvincing in light of the fact that Cruz was not convicted of rape until 2013, five years after plaintiff's trial. Id. Accordingly, Plaintiff has not satisfied his burden of demonstrating that the public interest in disclosure outweighs the privacy interests at stake because "there is no such evidence of agency misconduct." SafeCard Servs, Inc., 926 F.2d at 1206.

## C. **FOIA Exemption (7)(D)**

EOUSA, DOJ, and ATF each withheld records pursuant to FOIA Exemption 7(D), which allows agencies to withhold "records or information compiled for law enforcement purposes," but only to the extent that the withheld information "could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). A source is confidential for purposes of this exemption where "the source provided information under an express assurance of confidentiality." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993)).

EOUSA, DOJ, and ATF each invoked Exemption 7(D) in order to protect the identities of confidential informants who "provid[ed] information to law enforcement officers with an express promise of confidentiality." See, e.g., EOUSA Vaughn Index, Doc. 4; see also Boucher Decl. ¶¶ 27–30; Cunningham Decl. ¶¶ 19–23. DOJ, for example, asserted that it "withheld documents where the release of information contained within those records could clearly identify a third-party confidential source." Cunningham Decl. ¶ 23; see also Boucher Decl. ¶ 30 ("If this information were released, the source or sources of information would be identified to the Plaintiff."). The

confidential information was provided "during the course of a legitimate law enforcement investigation" into the activities of MS-13. Williams, 69 F.3d at 1159. The agencies thus properly invoked Exemption 7(D).

### D. FOIA Exemption (7)(E)

ICE and ATF both withheld records pursuant to FOIA Exemption 7(E), which likewise exempts from disclosure "records or information compiled for law enforcement purposes," when production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has recognized that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011). The agency need only demonstrate "logically how the release of the requested information might create a risk of circumvention of the law." Id.

Here, ICE and ATF have made that demonstration. Stephanie Boucher, Chief of the Disclosure Division at ATF, explained that "[a]lthough the use of recording devices and the use of [Confidential Informants/Confidential Sources] are known law enforcement techniques, specific information relating to the types of recording devices used, the parameters used to determine whether a device or [Confidential Informants/Confidential Sources] will be used, and how law enforcement employs those techniques could reveal information that would result in circumvention of the law." Boucher Decl. ¶ 33. If this "sensitive law enforcement information" were released, it "would jeopardize the future use of the investigative technique(s) or minimize the effectiveness of those techniques." Id. Similarly, Matthew Riley, Acting Deputy FOIA Officer at ICE, explained that "the law enforcement techniques redacted involve cooperative arrangements

between ICE and other agencies," the disclosure of which "could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed . . . and identify such techniques as they are being employed in order to either obstruct the investigation or evade detection from law enforcement officials."  Riley Decl. ¶ 37.  These statements logically explain how releasing the content of these documents could help criminals circumvent the law, and that "suffices here to justify invocation of Exemption 7(E)."  Blackwell, 646 F.3d at 42.

### E.  FOIA Exemption (7)(F)

EOUSA, DOJ, and ATF each withheld records pursuant to FOIA Exemption 7(F), which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or safety of any individual."  5 U.S.C. § 552(b)(7)(F).  The language in this exemption is "very broad," Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, 740 F.3d 195, 205 (D.C. Cir. 2014), and "has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester," Berard v. Fed. Bureau of Prisons, 209 F. Supp. 3d 167, 174 (D.D.C. 2016).  In addition, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." Pub. Emps. for Envtl. Responsibility, 740 F.3d at 205 (emphasis in original).  Courts generally defer to an agency's predictions of harm.  See id.

Here, EOUSA explained that Exemption 7(F) was asserted "to protect the identities (including identifying information) of confidential informants providing information to law enforcement officers with an express promise of confidentiality."  E.g., EOUSA Vaughn Index,

Doc. 15. If these identities were released, the individuals would be subject to "retaliation, including murder, by [a] violent criminal organization guilty of murder, attempted murder, arson, and assault." Id.; see also Cunningham Decl. ¶ 25 ("In light of the detailed information the confidential source provided to federal law enforcement, it is reasonable to expect that release of the confidential source identity would place him/her at great risk."). ATF's Chief of the Disclosure Division, furthermore, explained that "Plaintiff served as a fairly high level MS-13 gang member" and "[m]embers of MS-13 frequently engage in criminal activity, including, but not limited to, murders, assault, robberies, kidnappings, and witness intimidation." Boucher Decl. ¶ 35. "Based on the violent nature of the MS-13 street gangs . . . ATF asserted Exemption 7(F) to protect the identities and identifying information of all third parties involved in this case." Id. ¶ 37.

"Deferring to the agency's prediction of harm that could occur to individuals who provided [the agency] with information," Sandoval v. U.S. Dep't of Justice, No. 16-1013 (ABJ), 2017 WL 5075821, at *13 (D.D.C. Nov. 2, 2017), the Court concludes that EOUSA, DOJ, and ATF have sufficiently justified their invocations of Exemption 7(F).

### F. FOIA Exemption (5)

EOUSA and DOJ each withheld records pursuant to FOIA Exemption 5, which exempts from disclosure "inter-agency . . . memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). If a document requested pursuant to FOIA would normally be subject to disclosure in the civil discovery context, "it must also be disclosed under FOIA." Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996). This exemption thus protects—among other things—pre-decisional deliberative memoranda, attorney-client communications, and attorney work product, which are also privileged from civil discovery. Id.

Here, EOUSA and DOJ invoked Exemption 5 for documents that constitute attorney work-product. See Luczynski Decl. ¶¶ 14–17; Cunningham Decl. ¶¶ 11–12. EOUSA explained that the records withheld pursuant to Exemption 5 included, among other things, email communications of attorneys involved in plaintiff's criminal case and draft letters and memoranda. See EOUSA Vaughn Index. EOUSA concludes that these documents are therefore exempt because they "contain deliberations concerning possible strategies as they relate to the prosecution of the plaintiff" and "were prepared by, or at the request of an attorney, and made in anticipation of, or during litigation of plaintiff's criminal case." Luczynski Decl. ¶ 16. DOJ withheld certain documents that were "in the form of applications and worksheets which pertain to a third-party confidential source." Cunningham Decl. ¶ 12. "[B]ecause these applications and worksheets involve and contain the thought processes, personal evaluations, litigation strategies and positions of government attorneys and their agents," DOJ asserts that "they are clearly attorney work-product under Exemption 5." Id.

The documents withheld are attorney work product of the sort "routinely protected in discovery," and therefore "fall[] within the reach of Exemption 5." Burka, 87 F.3d at 516. Hence, the agencies' use of Exemption 5 was proper.

## G. **FOIA Exemption (3)**

EOUSA withheld a document pursuant to FOIA Exemption 3, which states that FOIA's disclosure obligation does not apply to matters that are "'specifically exempted from disclosure by [another] statute,' if the statute '(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,' or '(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.'" Labow v. U.S. Dep't of Justice, 831 F.3d 523, 527 (D.C. Cir. 2016) (quoting 5 U.S.C. § 552(b)(3)(A)). Federal Rule of Criminal Procedure

6(e), which bars disclosure of matters occurring before a grand jury, is "a qualifying statute under Exemption 3." Id. While there is no "per se rule against disclosure of any and all information which has reached the grand jury chambers," "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation," such as "the identities of witnesses or jurors." Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C. Cir. 1987) (citations and internal quotation marks omitted).

EOUSA invoked Exemption 3 in connection with a transcript of a conversation between third-party individuals, which described detailed criminal activity, including names of individuals, because "the release of the name of the witness or other contextual information that could lead to the derivation of the name would compromise the integrity of the grand jury system." Luczynski Decl. ¶ 13; EOUSA Vaughn Index, Doc. 16. As disclosure of the document in question "would tend to reveal . . . the identities of [grand jury] witnesses," Senate of Puerto Rico, 823 F.2d at 582 (internal quotation marks omitted), this document was properly withheld under Exemption 3.

## III.   SEGREGABILITY

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, EOUSA, DOJ, ICE, and ATF each examined all responsive documents "page-by-page" and determined that "no reasonably segregable non-exempt information was withheld from plaintiff." Luczynski Decl. ¶ 31; see also Boucher Decl. ¶ 38 ("All of the documents provided by EOUSA to ATF pertain to third parties. . . . A Disclosure Specialist reviewed the materials responsive to Plaintiff's FOIA request and determined that no documents could be

reasonably segregated from exempt information and produced to Plaintiff."); Cunningham Decl. ¶ 26 ("Upon review of the records responsive to plaintiff's request, the Criminal Division has also concluded that there is no segregable non-exempt information."); Riley Decl. ¶ 39 ("I have reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.").

Plaintiff "has not presented sufficient evidence"—or, indeed, <u>any</u> evidence—"to rebut th[e] presumption" that these statements correctly characterize the documents at issue and that the agencies have complied with their obligation to disclose segregable material. <u>Hodge v. FBI</u>, 703 F.3d 575, 582 (D.C. Cir. 2013). Hence, the agencies properly withheld records under FOIA Exemptions 3, 5, 6, 7(C), 7(D), 7(E), and 7(F), and appropriately concluded that no non-exempt material was reasonably segregable.[2]

## CONCLUSION

For the foregoing reasons, EOUSA's motion for summary judgment will be granted. A separate order has been issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: <u>March 14, 2018</u>

---

[2] EOUSA, ATF, and ICE also invoked the Privacy Act, 5 U.S.C. § 552a(j)(2), to justify withholding responsive documents in their possession. Because plaintiff does not bring any claims under the Privacy Act, the Court need not address the Act. However, "the Court notes that all of the records in this case appear to originate within record systems that have been exempted from the Privacy Act." <u>Parker v. U.S. Immigration & Customs Enf't</u>, 238 F. Supp. 3d 89, 98 n.8 (D.D.C. 2017); <u>see</u> 28 C.F.R. § 16.81(a)(1); <u>Privacy Act of 1974; Department of Homeland Security U.S. Immigration and Customs Enforcement–009 External Investigations System of Records</u>, 75 Fed. Reg. 404 (Jan. 5, 2010); Boucher Decl. ¶¶ 7–9; Luczynski Decl. ¶ 12; Riley Decl. ¶¶ 15–21. Thus, EOUSA, ATF, and ICE were likely "within [their] right to withhold documents identified in [these] database[s]." <u>Campbell v. United States Dep't of Justice</u>, 133 F. Supp. 3d 58, 69 (D.D.C. 2015).